LUCILLE A. CONLEY *vs.* LOUIS B. CONLEY.

Plymouth.    March 8, 1949. — July 5, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Jurisdiction*, Custody of child. *Domicil. Parent and Child. Minor. Marriage and Divorce*, Jurisdiction, Custody of child, Separate maintenance.

A Massachusetts court having jurisdiction of the parties and the cause in a divorce proceeding also had jurisdiction to make an order as to the custody of the parties' minor child, domiciled in Massachusetts, notwithstanding that at the time of such order the child was physically absent in another State where no court order as to his custody had been made.

The domicil of a minor child, whose custody was awarded to his mother by a valid decree, entered in a separate maintenance proceeding and binding upon the child and both his parents, was the domicil of his mother so long as such decree remained in force, and could not be changed by his father's abducting him and taking and keeping him out of the Commonwealth in violation thereof.

LIBEL for divorce, filed in the Probate Court for the county of Plymouth on January 13, 1948.

The case was heard by *Stone, J.*

*G. L. Wainwright*, for the libellee.

*L. H. Miller*, (*D. Silverstein* with him,) for the libellant.

QUA, C.J.    In this libel for divorce for cruel and abusive treatment, filed in the Probate Court for the county of Plymouth, a decree nisi was granted on July 12, 1948, including an order that the libellant have custody of the minor children of the parties, Lynette C. Conley, born March 11, 1945, and David A. Conley, born September 16, 1947, and that the libellee make payments for their support. The libellee appears specially and appeals from the decree in so far as it affects the custody and support of the child Lynette.

The facts appear from an "agreed statement of facts" in the nature of a case stated, from which further inferences

of fact may be drawn. We summarize the facts agreed so far as necessary for the purposes of this decision. On February 12, 1947, while the wife, the husband, and Lynette were all living and domiciled in Brockton in the county of Plymouth, the wife filed a separate support petition against the husband in the Probate Court for that county. The husband appeared by counsel. After hearing, the court made an order by which the temporary custody of Lynette was given to the wife, and the husband was ordered to pay $10 weekly for her support. The husband complied with this order for a few weeks, after which he ceased to make payments. The wife continued to live and have her domicil in Brockton at the home of her mother and "exercised the custody" of Lynette there. The husband lived apart from the wife and Lynette. On June 26, 1947, while the wife was pregnant with the second child, David, and while she had custody of Lynette under the order of the court, the husband went to the home of the wife's mother, "inflicted a brutal beating to his wife and her mother" sufficient to endanger the wife's life and health, and "forcibly and in spite of the efforts of his wife and her mother, succeeded in tearing the child away from them." He took the child out of the Commonwealth, and she has not been in the Commonwealth since that day. The wife did not know the whereabouts of the husband and the child. At the hearing on this libel for divorce on July 12, 1948, counsel for the husband informed the judge that Lynette was in Amarillo, Texas, with her father. In the meantime counsel for the husband had withdrawn his ·appearance in the separate support proceedings,[1] and, after hearing, at which the husband, whose whereabouts were unknown, was not represented, a decree had been entered therein in favor of the wife, giving her custody of both children, the child David having by that time been born, and ordering the husband to make payments for the support of his wife and children. The present libel for divorce was brought January

---

[1] The husband could not escape from the proceedings by a withdrawal of appearance. *Harvey* v. *Fiduciary Trust Co.* 299 Mass. 457, 465.

13, 1948. Service upon the husband was "duly made by publication." At the hearing on the present libel counsel for the husband "conceded" the jurisdiction of the Probate Court for the county of Plymouth "over the parties and over their marital status." He also admitted that the facts warranted the granting of a decree of divorce. "All of the evidence showed that the libellant was a proper person to exercise custody of the minor children." To all the foregoing facts the husband — now libellee — has agreed in this present proceeding.

The libellee's sole contention is that the court had no authority to make any order for the custody of Lynette for the reason that she had been out of the Commonwealth since he abducted her on June 26, 1947. We cannot accept this contention.

Mere physical presence of a child within its borders confers upon a State some jurisdiction with respect to his custody. *Woodworth* v. *Spring*, 4 Allen, 321. *Martin* v. *Gardner*, 240 Mass. 350, 354. *Schmidt* v. *Schmidt*, 280 Mass. 216, 218–219. *Finlay* v. *Finlay*, 240 N. Y. 429, 431. *New York* v. *Halvey*, 330 U. S. 610. See *Durfee* v. *Durfee*, 293 Mass. 472, 478–479. But it would be difficult to formulate any satisfactory reason why mere physical absence should preclude a decree for custody of a child whose domicil remains within the jurisdiction, there being no question of a conflicting decree in the State to which the child has been taken. We recently examined this subject at length in *Heard* v. *Heard*, 323 Mass. 357. At page 374 we said, "By virtue of the fact that the child here concerned is an inhabitant of this Commonwealth, that is, has his legal domicil here, that of his father, we conclude that as strict matter of law, notwithstanding that the child was not within our borders when the present proceeding was begun and determined in the Probate Court, that court had jurisdiction thereof." See also page 370. And see *Blackinton* v. *Blackinton*, 141 Mass. 432; *Glass* v. *Glass*, 260 Mass. 562; *Hersey* v. *Hersey*, 271 Mass. 545; *Gallup* v. *Gallup*, 271 Mass. 252. This position is further supported by Restatement:

Conflict of Laws, §§ 117, 144, 145, 146, 148, *Minick* v. *Minick,* 111 Fla. 469, 487–491, *White* v. *White,* 77 N. H. 26, and *Motichka* v. *Rollands,* 144 Wash. 565. We cannot follow *De la Montanya* v. *De la Montanya,* 112 Cal. 101, upon which the husband relies. The majority opinion in that case apparently proceeded upon the theory that a party, even though domiciled in the State, was not bound by substituted service while outside of it. But the contrary is now settled by *Milliken* v. *Meyer,* 311 U. S. 457.

The domicil of the child Lynette was at all material times and still is in this Commonwealth. The events in the case start with the domicil of the entire family at Brockton in the county of Plymouth. A domicil once established is presumed to continue until a new domicil is shown to have been substituted. *Sullivan* v. *Ashfield,* 227 Mass. 24, 26. *Connolly* v. *Phipps,* 283 Mass. 584, 588. *Commonwealth* v. *Davis,* 284 Mass. 41, 49. No facts appear sufficient to show any change in the domicil of any of the family. The facts agreed upon are stated to be "the facts material to the issues herein presented." This means all the material facts, except for warranted inferences from the facts expressly agreed. If we assume that, as at common law, the domicil of Lynette would follow that of her father,[1] still there is nothing to show that the father lost his domicil in Massachusetts. The facts that the father took the child out of the Commonwealth; that she remained outside; that his whereabouts were unknown; and that about a year later she was with him in Amarillo, Texas, are obviously insufficient to show that he had settled in Amarillo or anywhere else with the intent permanently to remain.

Moreover, the domicil of the child Lynette remained in Massachusetts for an additional conclusive reason. While the husband, the wife, and Lynette were all domiciled in this Commonwealth the Probate Court for the county of Plymouth acquired full jurisdiction over them upon the

---

[1] This principle may not always apply where there has been neglect of parental duty on the part of the father. *Glass* v. *Glass,* 260 Mass. 562, 565. Beale, Conflict of Laws, § 32.1.

petition for separate maintenance. In this proceeding it made a temporary order for custody of Lynette in the wife and later a permanent decree to the same effect, which finally was superseded by the decree now appealed from entered in the divorce proceeding in which the husband now agrees that "service on him was duly made by publication" and concedes the jurisdiction of the court over the parties and their marital status, though he disputes jurisdiction to award custody. It thus appears that when he abducted the child on June 26, 1947, and at all times thereafter until the decree appealed from was entered in the divorce proceeding the husband was continuously bound by valid decrees giving custody to the wife. His taking of the child and keeping her away from the wife was at all times in flagrant violation of those decrees. A husband has no power to change the domicil of his child while both are subject to a valid decree giving custody to the wife. In such circumstances the domicil of the child follows that of the wife. *Durfee* v. *Durfee,* 293 Mass. 472, 478. Restatement: Conflict of Laws, § 32. Beale, Conflict of Laws, § 32.1. *Kruse* v. *Kruse,* 150 Kans. 946. *Callahan* v. *Callahan,* 296 Ky. 444. *In re Volk,* 254 Mich. 25. *State* v. *Larson,* 190 Minn. 489. *Toledo Traction Co.* v. *Cameron,* 137 Fed. 48, 56–57. See *In re Penner,* 161 Wash. 479; *Goldsmith* v. *Salkey,* 131 Texas, 139; *Wicks* v. *Cox,* 146 Texas, 489. Any other rule would directly encourage the flouting of court decrees and the despicable practice of child snatching.

The child Lynette was therefore domiciled in this Commonwealth when the decree appealed from was entered. The libellee was bound by the substituted service, of which he had full notice. The statutory jurisdiction of the Probate Court was ample. G. L. (Ter. Ed.) c. 208, § 28. C. 209, § 32, as amended by St. 1938, c. 136; § 37. We need not consider whether the decree can be supported on other grounds.

*Decree affirmed.*