## FLORENCE E. MURPHY vs. KEVIN L. MURPHY.

Barnstable. February 7, 1980. — April 18, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Jurisdiction,* Custody of child. *Probate Court,* Jurisdiction, Custody of child. *Constitutional Law,* Full faith and credit.

The record in a proceeding by a wife against her husband, in which a Massachusetts Probate Court awarded custody of their minor child to the wife, required a conclusion that the jurisdictional requirements of G. L. c. 209, § 32, as amended by St. 1977, c. 984, § 1, were properly established on either the basis of domicil or presence of the child, or both; jurisdiction was indicated decisively where it appeared that about two years after the parties had established a domicil in Arizona and two days after entry there of a Superior Court order pendente lite granting temporary custody of the child to the husband the wife returned with the child to her parents' home in Massachusetts with an intent to reacquire a domicil here. [457-458]

The record in a proceeding commenced by a wife against her husband for custody of their minor child disclosed that it was an abuse of discretion on the part of a Massachusetts probate judge to allow continuation of the proceeding and to enter judgment granting custody of the child to the wife, where it appeared that previously an Arizona Superior Court had entered an order pendente lite in a proceeding, still in progress, of which the Arizona court clearly had jurisdiction granting temporary custody to the husband and enjoining the wife from leaving with the child without prior notice to the husband, an injunction which the wife violated two days after its entry by returning to Massachusetts with the child without giving such notice, that the husband did not submit himself generally to the jurisdiction of the Massachusetts Probate Court, that the parties had significant contacts in Arizona, and that other than a change in domicil from Arizona to Massachusetts no material change in circumstances had occurred since the Arizona order. [458-461]

Where this court concluded that maintenance of simultaneous proceedings for the custody of the minor child of a husband and wife in Arizona and Massachusetts could not be justified, and that almost a year and seven months had passed since entry of a Massachusetts Probate Court judgment granting custody of the child to the wife, not-

withstanding a previous Arizona Superior Court order pendente lite granting custody to the husband, the case was remanded to the Probate Court for a new hearing, with consideration to be given to any material change in circumstances since the entry of the Probate Court judgment. [461-463]

CIVIL ACTION commenced in the Barnstable Division of the Probate and Family Court Department on July 31, 1978.

The case was heard by *Lewis*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Joseph P. Dunn, Jr.*, for the defendant.

*Robert E. Terry* for the plaintiff.

LIACOS, J. Kevin L. Murphy (husband) appeals from a judgment of the Probate Court for Barnstable County granting custody of their minor child to Florence E. Murphy (wife). The husband argues that the Probate Court lacked jurisdiction because of an Arizona order pendente lite granting temporary custody of the child to him. We transferred the appeal here from the Appeals Court on our own motion.

We summarize the facts and the proceedings below. The parties were married in Barnstable, Massachusetts, in July, 1975. A child was born to the marriage in December, 1975, in Falmouth, Massachusetts. In February, 1976, the husband left Massachusetts to begin his tour of duty with the United States Air Force. His wife and child joined him in Texas in April of that year. Subsequently, in July, 1976, the husband was assigned to a military base in Tucson, Arizona, and his family joined him there. The parties purchased a house in Arizona where they lived together until their separation in April, 1978. On April 20, 1978, the husband filed a petition in the Arizona Superior Court (Pima County), seeking dissolution of the marriage, custody of the child, and division of the property and debts of the marriage. The wife retained counsel and filed a response seeking, inter alia, a dissolution of the marriage, custody of the child, support for herself and the child, division of the marital estate

and the right to resume use of her maiden name. A hearing was held on June 22, 1978, before a commissioner of the Arizona Superior Court where both parties were represented by counsel, gave testimony and presented evidence. On July 5, 1978, the Superior Court commissioner entered an order pendente lite granting temporary custody of the child to the husband and prohibiting the wife from removing the child from Pima County without prior notice to the husband.

Two days later, without prior notice, the wife returned with the child to live at her parents' home in Massachusetts. On July 31, 1978, she filed a petition for separate support in the Barnstable Probate Court, together with a motion for temporary custody of the child. The husband's counsel filed on the same day a special appearance solely for the purpose of contesting jurisdiction. The motion for temporary custody was allowed on July 31, 1978, pending a hearing on the merits of the petition for separate support. After a hearing on August 10, in which the husband's attorney appeared, contested jurisdiction and "stood mute" as to the cross-examination of the plaintiff's two witnesses (herself and her sister), a temporary order awarding custody of the child to the plaintiff was entered. On September 26, 1978, judgment was entered for the wife, granting her custody of the child. The judgment granted the husband the right to see the child at the home of the wife, in the presence of the wife and two other witnesses, but contained no provision as to support of the wife or the child.

The husband claims error and argues that since both parties appeared in the Arizona court, admitted domicil in Arizona, and contested the issue of divorce, custody and support in an adversary proceeding, the Arizona court had jurisdiction to determine the custody of the minor child. The husband further contends that the child was removed from Arizona contrary to the order of the Arizona court, that there was no change in circumstances warranting a reversal of that court's order by the Probate Court, and that the Massachusetts court was required to give full faith and credit to

the order of the Arizona court under art. IV, § 1, of the Constitution of the United States. The wife argues that the Barnstable Probate Court had jurisdiction to entertain her petition for separate support, under G. L. c. 209, § 32, where the plaintiff is domiciled in Massachusetts and both mother and child are residents of and physically present in the Commonwealth. She asserts that the orders and judgment of the Barnstable Probate Court were a proper exercise of its power to act in the best interests of the child. No argument is made by the wife that there had been a change of circumstance from the time of the entry of the Arizona order to the time of the filing of the petition for support and custody in the Barnstable Probate Court.

We first consider the question whether the Probate Court had jurisdiction to enter the custody judgment pursuant to G. L. c. 209, § 32.[1] This court has held that under G. L. c. 209, § 32, the Probate Court has jurisdiction over child custody matters, on substituted service, if either party is domiciled within the Commonwealth.[2] *Wiley* v. *Wiley*,

---

[1] General Laws c. 209, § 32, as amended by St. 1977, c. 984, § 1, provides in pertinent part: "If a spouse fails, without justifiable cause, to provide suitable support of the other spouse, or deserts the other spouse, or if a married person has justifiable cause for living apart from his spouse, whether or not the married person is actually living apart, the probate court may, upon the complaint of the married person, . . . prohibit the spouse from imposing any restraint upon the personal liberty of the married person during such time as the court by its order may direct or until further order of the court thereon. Upon the complaint of any such party or guardian of a minor child made in accordance with the Massachusetts Rules of Civil Procedure the court may make further orders relative to the support of the married person and the care, custody and maintenance of minor children, may determine with which of the parents the children or any of them shall remain and may, from time to time, upon similar complaint revise and alter such judgment or make a new order or judgment as the circumstances of the parents or the benefit of the children may require."

[2] *Green* v. *Green*, 351 Mass. 466 (1966), refers to another basis of jurisdiction in a proceeding under G. L. c. 209, § 32, i.e., personal jurisdiction over the parties. In both cases, the absent spouse had been served "in hand" in Massachusetts. We note that, despite the "special appearance" filed by the husband's attorney on July 31, 1978, to contest jurisdiction, the husband voluntarily accepted service of the petition in Arizona before

328 Mass. 348, 349 (1952). In *Wiley, supra* at 351, we held that reacquisition of a Massachusetts domicil was achieved where the wife returned here with the intention of remaining indefinitely. The record in the case at bar indicates that both parties were born in Massachusetts and resided in Massachusetts until their marriage, that the child of the marriage was born here, that defendant enlisted for military service from this State, that both parties have parents residing in this State, that both parties maintain a driver's license and motor vehicle registration in Massachusetts, and that the parties filed a joint income tax return in Massachusetts for the years 1976-1977 (even though located in Arizona). The record also indicates that the wife alleges that she returned to her parents' home in Massachusetts with an intent to reacquire a Massachusetts domicil. We note that the Murphy child is physically present in the Commonwealth and that the probate judge took jurisdiction on this basis, although such presence is not necessarily required in order to meet the jurisdictional requirements of G. L. c. 209, § 32. *Green* v. *Green*, 351 Mass. 466 (1966), cited in *Doe* v. *Roe*, 377 Mass. 616, 618 (1979). We, therefore, conclude that the jurisdictional requirements of G. L. c. 209, § 32, were met. See also G. L. c. 209, § 37; *Schmidt* v. *Schmidt*, 280 Mass. 216 (1932).

The critical question, however, is whether the court should have exercised jurisdiction in this case. The exercise of jurisdiction is in no sense mandatory. As this court has stated, "surely we should not insist on exercising such jurisdiction whenever permissible as a matter of due process of law. Rather we should deal with the question as a prudential one which invites careful examination of the relation of the lawsuit to the Commonwealth, including such issues as access to evidence and convenience of management or administra-

a notary public on August 24, 1978 (prior to the entry of judgment). The parties do not argue the question whether such acceptance of service was sufficient to give the Probate Court jurisdiction, and we need not reach the question, since we hold jurisdiction to have been properly established on either the basis of domicil or presence of the child, or both.

tion; and it should count against assuming jurisdiction that there is another State better situated to deal with the matter. . . . Actually the whole trend of the law is, or ought to be, to pay less attention to formal jurisdictional tests and more to functional or pragmatic considerations about the comparative advantages of one forum over another." *Doe v. Roe*, 377 Mass. 616, 618-619 (1979).[3] This discretionary approach to jurisdiction in child custody cases is in accord with the Uniform Child Custody Jurisdiction Act (1968), 9 U.L.A. §§ 3, 7 (1973) (recodified in 1979 edition), not adopted in Massachusetts, but cited with approval in *Doe, supra* at 619 n.3.

We now apply the considerations enumerated above to the circumstances in the case at bar to determine whether the Probate Court judge's exercise of jurisdiction was proper. The full faith and credit clause of the United States Constitution, art. IV, § 1, does not require, as the husband argues, that Massachusetts give full faith and credit to the Arizona order for the reason that the Arizona order pendente lite is not a final judgment.[4] See *New York ex rel. Halvey v. Hal-*

---

[3] In *Green v. Green*, 351 Mass. 466 (1966), cited in *Doe v. Roe*, 377 Mass. 616, 618 (1979), we held that the Probate Court had jurisdiction to make a custody decree under G. L. c. 209, § 32. We added, however, "[i]t does not follow that the judge must exercise that jurisdiction. . . . [T]he paramount considerations are the welfare of the children and whether their interests will be effectively represented. *Hersey v. Hersey*, 271 Mass. 545, 555 [1930]. The following considerations may also be important: (1) access to the relevant evidence; (2) convenience of the forum; (3) the circumstances upon which the children's present domicil and residence are based; and (4) whether continuing supervision by a court of another jurisdiction is desirable. See *Sampsell v. Superior Court of Los Angeles County*, [32 Cal. 2d 763 (1948) (opinion by Traynor, J.)]; Restatement 2d: Conflict of Laws [§ 117, Comment a (Tent. Draft No. 1, 1953)]; Ratner, Child Custody in a Federal System, 62 Mich. L. Rev. 795, 808-810. There may be other considerations; we have enumerated those that are likely to be pertinent in most situations." *Green, supra* at 471-472.

[4] Arizona Rev. Stat. § 25-315 (Supp. 1979) provides in pertinent part: "In all actions for the dissolution of marriage or for legal separation, the clerk of court shall pursuant to order of the Superior Court issue a preliminary injunction . . . . A temporary order or preliminary injunction:

*vey,* 330 U.S. 610 (1947); *Heard* v. *Heard,* 323 Mass. 357 (1948). However, the fact that the Arizona temporary order was incidental to an Arizona proceeding which was still in progress at the time the Massachusetts Probate Court entered its order is significant. See Uniform Child Custody Jurisdiction Act (1968), 9 U.L.A. § 6 (1979). Where a court of another State has validly assumed jurisdiction over a particular child custody matter, Massachusetts courts should seriously consider the propriety of entertaining a simultaneous custody proceeding in this State. See *Aufiero* v. *Aufiero,* 332 Mass. 149, 153 (1955); Uniform Child Custody Jurisdiction Act, *supra,* Commissioner's Note to § 6. The wife, having submitted herself to the jurisdiction of the Arizona court, should not be allowed to seek relief in Massachusetts simply because she is dissatisfied with the preliminary determination of the Arizona court. She must base her request on the welfare of the child, focusing on such issues as the relative significance of the parties' jurisdictional contacts and the relative accessibility of evidence in the two States. See *Doe* v. *Roe, supra; Green* v. *Green, supra.*

The Arizona court clearly had jurisdiction over the child custody determination. Uniform Child Custody Jurisdiction Act, Ariz. Rev. Stat. § 8-403 (Supp. 1979). The parents and the child were all physically present. The husband and wife bought a house and lived together in Arizona with their child from July, 1976, to April, 1978. During the Arizona proceeding, both parties alleged that they were Arizona domiciliaries. The Arizona temporary order was entered after a full day's hearing. A total of eight witnesses testified, four on behalf of the wife and four on behalf of the husband. The wife left Arizona with the child, in violation

1. Does not prejudice the rights of the parties or any child which are to be adjudicated at the subsequent hearings in the proceeding. 2. May be revoked or modified before final decree on a showing by affidavit of the facts necessary to revocation or modification of a final decree under § 25-327 and as provided in rule 65 of the Rules of Civil Procedure. 3. Terminates when the final decree is entered or when the petition for dissolution or legal separation is dismissed."

of the temporary order, only two days after entry of the order. She instituted proceedings in Massachusetts less than four weeks after her arrival here, while the proceeding in Arizona was still pending. The husband did not submit himself generally to the jurisdiction of the Massachusetts Probate Court.[5] The entire Probate Court hearing in Massachusetts consisted of arguments of counsel and testimony of the wife and her sister. No material change in circumstances was alleged other than the move from Arizona to Massachusetts. In light of the very brief lapse of time between the entry of the Arizona temporary order and the Massachusetts proceeding, it would be most unusual for a material change in circumstances to have occurred.

We conclude that maintenance of simultaneous custody proceedings in Arizona and Massachusetts cannot be justified factually on the basis of the parties' more significant contacts here[6] or better access to relevant evidence here. The record reveals circumstances to the contrary. Moreover, the wife has sought access to the courts of this State with "unclean hands." Her removal of the child from Arizona to Massachusetts was in flagrant defiance of the Arizona temporary order.[7] Such custodial interference is a crime in Arizona. Ariz. Rev. Stat. § 13-1302 (1978).

This court has in the past developed rules aimed at discouraging "the despicable practice of child snatching."

---

[5] But see note 2, *supra*.

[6] The wife urges this court to consider the parties' filing of Massachusetts Tax Returns in 1976 and 1977 and their maintenance of Massachusetts drivers licenses and motor vehicle registration as significant contacts to Massachusetts. We have considered these incidents of Massachusetts residence, and note the husband's enlistment in the Armed Services as a justification for them. See Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. App. § 501 et seq. (1976).

[7] The order states in pertinent part, "the Respondent is enjoined from leaving Pima County with the minor child, and should she desire to leave Pima County with the child, she is to notify the Petitioner/husband not less than forty-eight (48) hours in advance." The record reflects no such 48-hour advance notice, and, in any case, it is clear that the decree did not authorize the wife's permanent removal of the child to Massachusetts.

*Conley* v. *Conley,* 324 Mass. 530, 534 (1949). For example, a parent has no power to change the domicil of a child while both are subject to a valid decree awarding custody to the other parent. *Id.* Also a parent is not entitled as of right to press an appeal from a custody decree favorable to the other parent after removing the child from the jurisdiction in violation of that decree. *Henderson* v. *Henderson,* 329 Mass. 257 (1952). Cf. *Ellis* v. *Doherty,* 334 Mass. 466, 467 (1956). We believe that a parent's misconduct should likewise be considered in determining whether simultaneous custody proceedings are appropriate. See *Leathers* v. *Leathers,* 162 Cal. App. 2d 768, 775 (1958); Ehrenzweig, Interstate Recognition of Custody Decrees, 51 Mich. L. Rev. 345 (1953); Uniform Child Custody Jurisdiction Act (1968); 9 U.L.A. § 8 (1979). While such misconduct is a relevant consideration, it is not necessarily controlling. *Aufiero, supra.* See *Hersey* v. *Hersey,* 271 Mass. 545 (1930); *Gil* v. *Servizio,* 375 Mass. 186 (1978). As we indicated in *Aufiero,* the child "was not chargeable with the misconduct of her mother in failing to return her . . . and ought not to be compelled to suffer for it. Her welfare is the paramount consideration." *Aufiero, supra* at 153. The misconduct of the parent may, nevertheless, adversely affect the welfare of the child. Captures and possible recaptures of a child can be "harmful to the child and [can cause] emotional and physical reactions in the child commensurate with these distresses." *Vilakazi* v. *Maxie,* 371 Mass. 406, 408 (1976).

The parties have significant contacts to Arizona, and the Arizona proceeding appears thorough and complete. The wife alleged no material change in circumstances since the time of that proceeding other than her illegal removal of the child.[8]

---

[8] The party seeking modification of a foreign custody decree is required to show a material change in circumstances. *Buchanan* v. *Buchanan,* 353 Mass. 351 (1967). See also G. L. c. 209, §§ 32, 37. This principle has particular relevance where the foreign decree is pendente lite, in light of the policy against entertaining a custody proceeding in Massachusetts at the same time a similar proceeding is pending in a competent court of a sister State.

The Probate Court judge's decision to allow a simultaneous custody proceeding in Massachusetts in the circumstances was an abuse of discretion and cannot stand. The judgment of the Probate Court was entered on September 26, 1978. In light of the considerable passage of time since the entry of that order, we think it appropriate to remand the case to the Probate Court for a new hearing. The judge should consider, in addition to the views expressed herein, any material change in circumstances since the entry of the September 26, 1978, judgment.[9]

*So ordered.*

---

[9] During oral argument the parties informed this court that a final Arizona decree of divorce had been entered awarding custody of the child to the husband. This final decree was purportedly entered subsequent to the Massachusetts Probate Court proceeding. We note the absence of the divorce decree in the record.

The wife's complaint under G. L. c. 209, § 32, is no longer appropriate if the final Arizona decree included dissolution of the marriage. It is a prerequisite under G. L. c. 209, § 32, that the parties be married. *Welker* v. *Welker*, 325 Mass. 738, 743 (1950). The wife may consider whether she would be required to seek relief pursuant to G. L. c. 208, § 29.