## DANIEL A. MARTIN *vs.* JOSEPH GARDNER.

Worcester. September 26, 1921. — February 27, 1922.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Probate Court,* Jurisdiction, Guardianship. *Minor. Guardian. Constitutional Law. Words,* "Inhabitants," "Residents."

In G. L. c. 201, § 1, conferring jurisdiction upon the Probate Court to appoint guardians of minors "who are inhabitants of or residents in the county or who reside out of the Commonwealth and have estate within the county," the words "inhabitants of" and "residents in" are not used synonymously.

The Probate Court has jurisdiction under G. L. c. 201, § 1, to appoint a guardian of a minor who resides within this Commonwealth although he is neither domiciled nor has any property here.

It is within the power of the General Court to give jurisdiction to the Probate Court to appoint a guardian of a minor who resides within this Commonwealth although he is neither domiciled nor has any property here.

A petition by a citizen of this Commonwealth for appointment of the petitioner as guardian, with custody, of a girl under fourteen years of age, recited that the girl was "of Fitchburg" in this Commonwealth, that her father was "of Mt. Vernon, New Hampshire" and that the parents were "unfit to have such custody." It appeared that, about two years and four months before the filing of the petition, the girl, then nearly three years of age, in poor physical condition, and with a delicate constitution which had not received appropriate care, was removed to a hospital in New Hampshire. Her father, who was a woodchopper

earning $20 a week and with a family consisting of his wife and seven children, did not visit her at the hospital and the mother seldom saw her. A year later, having improved in health, the child was removed to an orphanage in New Hampshire where, through a mistake, she was entered as of unknown parentage. The petitioner saw her there, was informed that her parents were unknown and by permission of the orphanage authorities without the knowledge of the parents in good faith took her to his home in Fitchburg and sought a decree of adoption in New Hampshire. The parentage of the child then was discovered, the father opposed the adoption and a decree was refused. This petition for guardianship then was brought and an attorney appeared therein for the father "for the purpose solely of raising the question of the jurisdiction of the court." The foregoing facts being found, the judge also found that the child for sixteen months had "been living in Fitchburg," and a decree granting guardianship with custody was entered. The father appealed. *Held*, that

(1) A finding that the child was a resident of this Commonwealth was warranted;

(2) The facts found and the decree entered necessarily implied a finding of such residence;

(3) Custody properly was awarded;

(4) The petition was sufficient in form;

(5) The decision is confined to the question of jurisdiction.

PETITION, filed in the Probate Court for the county of Worcester on May 26, 1920, representing "that there is occasion for the appointment of a guardian of Mildred Olivine Gardner, alias Gardiner, born March 6th, 1915, of Fitchburg, in the County of Worcester, minor and child of Joseph Gardner, alias Joseph Gardiner, of Mt. Vernon, New Hampshire, and Mary St. J. Gardner, alias Mary St. J. Gardiner," and praying that the petitioner, "or some other suitable person, may be appointed to that trust, and have the custody of the person of said minor, the parents being unfit to have such custody."

The parents of the minor by their attorney appeared "specially . . . for the purpose solely of raising the question of the jurisdiction of the court."

The petition was heard by *F. H. Chamberlain*, J. Material facts found by him, other than those described in the opinion, were that the minor at the time of the hearing "and continuously for sixteen months has been living in Fitchburg, Massachusetts; that she was brought into this Commonwealth with the consent of the authorities having the actual custody and that the petitioners have acted in the matter with the utmost good faith." The judge "ruled that the courts of this Commonwealth had the right and

the duty to provide a suitable custodian for this child, so long as she remained within the Commonwealth, and allowed the petition."

The decree was "that said petitioner be appointed guardian and have the custody of the person and estate of said minor, first giving bond without sureties, for the due performance of said trust."

The father of the child appealed and at his request the judge reported the facts found by him.

The case was argued at the bar for the respondent before *Rugg,* C. J., *De Courcy, Pierce, Carroll, & Jenney,* JJ., when the petitioner submitted a brief; and afterwards was submitted on briefs to all the Justices except *Pierce,* J.

*J. A. Stiles,* for the respondent.

*A. Z. Goodfellow & P. F. Ward,* for the petitioner.

Rugg, C. J. This is an appeal by the father of Mildred O. Gardner, a minor under the age of fourteen years, from a decree of the Probate Court appointing Daniel A. Martin her guardian with custody of the ward. St. 1919, c. 274, § 3. G. L. c. 215, § 11.

In January, 1918, the child, nearly three years old, who always had lived with her parents, then and now residents of New Hampshire, was taken to a hospital in that State. She was then in poor physical condition and had not received care appropriate to her delicate constitution. The father was a woodchopper, earning about $20 a week, and away from home much of the time. There were seven children in the family. While the child was in the hospital the father did not visit the child and the mother seldom saw her. They resided at a distance from the hospital and their means were limited.

The child remained in the hospital until February, 1919, when, having greatly improved in health, she was removed to an orphanage connected with the hospital. By mistake she there was recorded as of unknown parentage. The petitioner and his wife, who reside in Fitchburg in this Commonwealth, saw the child in the orphanage, were informed that her parents were unknown, and on August 15, 1919, by permission of those in charge of the institution, took her to their home. Neither parent knew that she was to be taken from New Hampshire, but the removal was not clandestine nor in bad faith. Soon after, the petitioner and his wife petitioned in the court of New Hampshire to adopt the child. The error in the orphanage record then was first discovered, the

parents were notified, and after a hearing the proceeding was dismissed. The present petition then was filed.

The father assails the jurisdiction of the Probate Court upon these facts. That court is empowered by R. L. c. 145, § 1, G. L. c. 201, § 1, to appoint guardians of minors "who are inhabitants of or residents in the county or who reside out of the Commonwealth and have estate within the county." Apparently this child has no estate within the county. The jurisdiction of the court depends, therefore, upon the question whether she is an inhabitant of or a resident in the county. These statutory provisions have long been in force. They permit the institution of proceedings in the county in which the minor is an inhabitant or a resident. Similar language is found in the statute giving jurisdiction of the probate of wills and the appointment of administrators, R. L. c. 162, § 3. G. L. c. 215, § 3. In *Harvard College* v. *Gore*, 5 Pick. 370, 373, it was said that the words "inhabitant" and "resident" are not used synonymously, "not merely because they are used disjunctively, but because they are words of different capacities and meaning. If it had been intended that residence alone should in all cases give jurisdiction to the court, the word inhabitant was superfluous; and if habitancy, in its technical sense according to our law, was in all cases to be required, then many cases would be excluded from jurisdiction which have been practically cognizable in the Probate Courts, and which it cannot be supposed the Legislature intended to leave unprovided for. Many aliens reside for years within the Commonwealth, without becoming inhabitants of any town or county; for the term inhabitant imports many privileges and duties which aliens cannot enjoy or be subject to; and yet such persons often make wills which are proved and allowed here, and lawfully, because they are residents in some particular county. It may well be supposed that the Legislature intended to embrace such cases in the statute, and that they had respect, in providing for the probate of wills, to two classes of persons, — citizens, who are necessarily inhabitants of some town and county, and strangers, who can be residents only in some town or county." Other cases recognize that the words frequently are used as of different signification. *Lee* v. *Boston*, 2 Gray, 484, 490. *Briggs* v. *Rochester*, 16 Gray, 337. *Borland* v. *Boston*, 132 Mass. 89, 97, 98. *Olivieri* v. *Atkinson*, 168

Mass. 28. *Commonwealth* v. *Acker,* 197 Mass. 91, 93. While the words frequently have been used as of the same import (*Lyman* v. *Fiske,* 17 Pick. 231; *McDaniel* v. *King,* 5 Cush. 469, 473 ; *Lee* v. *Boston, supra*; *Borland* v. *Boston, supra; Stoughton* v. *Cambridge,* 165 Mass. 251; *Olivieri* v. *Atkinson, supra*), their disjunctive use in the statutes relating to the proof of wills, appointment of administrators and of guardians has continued nearly one hundred years since the decision in *Harvard College* v. *Gore, supra,* and long after the other decisions cited. The statute, thus construed, authorizes the appointment of guardians of minors residing within this Commonwealth although not domiciled nor having property therein. Such authority is clearly within legislative power. *Woodworth* v. *Spring,* 4 Allen, 321. *Lamar* v. *Micou,* 112 U. S. 452, 470. *New York Foundling Hospital* v. *Gatti,* 203 U. S. 429, 440. *Matter of Hubbard,* 82 N. Y. 90. *Kelsey* v. *Green,* 69 Conn. 291. The domicil of the minor was that of her father (*Lamar* v. *Micou, supra, Matter of Hubbard, supra*), but her presence in Massachusetts was not clandestine nor by force. Her removal was in good faith and not for the purpose of procuring jurisdiction. Her presence here had continued for more than nine months when the petition for guardianship was filed. The parents either knew of that presence or in the exercise of ordinary parental care should have known of it. See *Purinton* v. *Jamrock,* 195 Mass. 187, 199. On the facts found the judge was justified in assuming jurisdiction. The facts found and the decree necessarily imply a finding of residence.

The custody of the minor could be awarded to the guardian as incidental to his appointment. The petition, which alleged that the minor was "of Fitchburg, in the county of Worcester" and her father "of Mt. Vernon, New Hampshire," was sufficient. *Chambers's Case,* 221 Mass. 178. *Harding* v. *Brown,* 227 Mass. 77.

The question of jurisdiction is stated in the brief of the parent to be "the sole proposition on which" he "bases his appeal." That is the only question of law presented. Other questions which might have been raised and argued therefore have not been considered, and no intimation is made concerning them. See *Commonwealth* v. *Dee,* 222 Mass. 184.

*Decree affirmed.*